# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY BROWN, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 16-10977-FDS |
| ) | |
| GEOFFREY LUCAS and CRAIG STAFFIER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO AMEND

SAYLOR, J.

This is an action arising out of the use of a police dog during an arrest by Randolph police officers. Plaintiff Anthony Brown was arrested after committing burglary. During the arrest, Randolph K-9 unit officer Geoffrey Lucas commanded his police dog, Rony, to bite Brown. Brown was eventually taken into custody by other officers who arrived on the scene.

Brown has brought suit under 42 U.S.C. § 1983, contending that Lucas and officer Craig Staffier used excessive force in violation of the Fourth Amendment. He is proceeding *pro se*. Defendants have moved for summary judgment, and plaintiff has moved to amend the complaint to add the City of Randolph as a defendant. For the following reasons, the motion for summary judgment will be granted in part and denied in part, and the motion to amend will be denied.

## I.  Background

Unless otherwise noted, the following facts are as set forth in the record and are

undisputed.[1]

    A.    **Factual Background**

On April 23, 2013, police dispatchers in Randolph, Massachusetts, received a phone call from a homeowner on Vine Street stating that an unidentified male (later identified as Anthony Brown) had attempted to break into his home. (Def. Ex. A). The homeowner stated that the male fled on a bicycle toward Lafayette Street. (*Id.*). Detectives David Clark and Michael Tuitt of the Randolph Police Department viewed the homeowner's security video and noted that the suspect appeared to be an African-American male "around 5'11 with a[n] athletic buil[d]." (*Id.*). The suspect was also wearing a hooded sweatshirt, jeans, and white sneakers. (*Id.*).

Detective Clark was then informed by dispatchers that a homeowner on Belcher Street had returned home with his son when he encountered a male (later identified as Brown) stealing his Apple iPad. (*Id.*). The homeowner stated that the male fled toward a wooded area behind his home. (*Id.*). The homeowner provided a physical description of the suspect that corroborated the video recording from Vine Street. (*Id.*).

Officers set up a perimeter surrounding the wooded area between North Main Street and Belcher Street. (*Id.*). Sergeant Anthony Marag saw an individual who fit the suspect's description running through several backyards. (*Id.*). K-9 unit officer Geoffrey Lucas and his German Shepherd dog, Rony, then moved into the area.[2] Another officer, Craig Staffier, saw the suspect run into a yard at the corner of School Lane and Belcher Street, and radioed his location to other officers, including Lucas. (*Id.*).

---

[1] Plaintiff did not submit his own statement of material facts or an affidavit. However, he did submit transcripts from his state-court criminal trial. In light of plaintiff's *pro se* status, the Court will consider the transcripts as evidence in addressing the summary judgment motion.

[2] Rony was a patrol dog, and specialized in "tracking, area searches, building searches, crowd control, and protection." (Trial Tr. at 43).

2

The parties dispute the circumstances surrounding Brown's arrest. Defendants contend that the dog tracked the suspect's scent and led Lucas eastward until they arrived in a lot containing a shed and various debris, including scrap metal and hardware. (*Id.*). According to defendants, the dog pulled Lucas toward a sheet of plywood on the ground, and attempted to crawl under it. (*Id.*). Lucas turned over the plywood, uncovering Brown, and ordered him to show his hands. (*Id.*). Brown then punched the dog in the head and attempted to kick him. (*Id.*). Lucas then ordered the dog to bite Brown, and it bit Brown's left calf. (*Id.*).

By contrast, at his criminal trial, Brown testified that he was urinating on the side of a house when he saw Lucas and Rony approaching. (Trial Tr. at 96).[3] Although Lucas ordered him to get down, Brown refused until he saw the dog getting closer. (*Id.* at 97). Brown testified in substance that at that point, he surrendered, lay prostrate on the ground, and asked Lucas to not permit the dog to bite him. (*Id.*). According to Brown, although he was compliant with the officer's commands, Lucas "let the dog maul the back of [his left] leg." (*Id.* at 98).

After the bite occurred, Staffier arrived and rolled Brown onto his stomach to handcuff him. (*Id.* at 165). Within a few minutes, other officers arrived to help take Brown into custody and obtain medical treatment. (Def. Ex. A).

Brown was prosecuted in Norfolk Superior Court for burglary and various related charges. On April 1, 2015, he was convicted of nighttime unarmed burglary, daytime breaking and entering, and possession of burglarious tools. (Verdict Tr. at 9-10).[4] He was acquitted of attempted daytime unarmed burglary, resisting arrest, and mistreating or interfering with a police dog. (*Id.*).

---

[3] Brown denied committing any burglary and stated that he had instead been purchasing and smoking marijuana. (Trial Tr. at 89).

[4] The transcript plaintiff attached has some typographical errors.

3

B.  **Procedural Background**

Brown filed this suit on March 22, 2016, in Norfolk Superior Court against Lucas and Staffier. The *pro se* complaint alleged constitutional violations and sought unspecified damages under 42 U.S.C. § 1983. Defendants timely removed the action to this Court on May 27, 2016.

The action was initially assigned to Judge O'Toole, who construed the complaint to assert § 1983 claims under the Fourth (excessive force), Fifth (due process), Eighth (cruel and unusual punishment), and Fourteenth (due process) Amendments. On March 31, 2017, Judge O'Toole granted defendants' motion to dismiss in part, permitting only the § 1983 claim for excessive force to proceed.

The action was reassigned to the undersigned judge on January 23, 2018. Defendants have now moved for summary judgment. Plaintiff has moved to amend the complaint to add the City of Randolph as a defendant.

## II.  Defendant's Motion for Summary Judgment

A.  **Legal Standard**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court

indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256–57.

### B. Analysis

Defendants contend that they are entitled to qualified immunity. The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has articulated a two-part test for determining qualified immunity. *Pearson v. Callahan*, 555 U.S. 223 (2009); *see Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). The relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.* The qualified-immunity doctrine "leaves ample room for mistaken judgments." *Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). Courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

The Court will directly address the second prong. In the Fourth Amendment context, the First Circuit has stated that the critical question is whether the force used was "excessive under objective standards of reasonableness." *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014).

5

In turn, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Here, the uncontroverted evidence shows that Randolph police received reports that a suspect had burglarized one home and attempted to break into another. There was videotape footage and a corroborating eyewitness report that the suspect was an African-American male wearing a hooded sweatshirt, jeans, and white sneakers. Plaintiff fit that description.

There is no evidence that Staffier used excessive force or otherwise violated plaintiff's constitutional rights. The evidence only shows that Staffier alerted Lucas to plaintiff's location, and after the bite occurred, Staffier rolled plaintiff onto his stomach to handcuff him. Accordingly, defendant Staffier is entitled to qualified immunity.

However, there are disputed issues of material fact surrounding the circumstances of plaintiff's arrest. Defendants contend that plaintiff fled pursuing officers, refused to show his hands, and attacked a police dog, necessitating the bite order for Lucas's (and the dog's) safety. But assuming, as the Court must, that plaintiff's allegations are true, his claim is that he complied with Lucas's orders and lay on the ground, posing no threat, when Lucas "let the dog bite [him]." (Trial Tr. at 98). If, in fact, plaintiff had surrendered when the bite occurred, Lucas used an unreasonable amount of force. *See Jarrett v. Town of Yarmouth*, 331 F.3d 140, 147 (1st Cir. 2003) (noting that if the officer had ordered the dog "to bite and hold *after* [plaintiff] surrendered himself . . . the [plaintiff] clearly suffered a constitutional injury.") (emphasis in original). Indeed, plaintiff was acquitted of resisting arrest and mistreating or interfering with a police dog, suggesting that a reasonable jury could believe his version of events. Under the circumstances, that is sufficient evidence for the claim of qualified immunity as to Lucas to be

denied.

Accordingly, the motion for summary judgment will be denied as to defendant Lucas and otherwise granted.

### III. **Motion to Amend**

#### A. **Legal Standard**

Under Rule 15(a), a party may amend a pleading without leave of court in certain relatively narrow circumstances. Fed. R. Civ. P. 15(a). "In all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, amendments may be denied on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

#### B. **Analysis**

On June 5, 2017, Judge O'Toole issued a scheduling order setting a deadline of January 31, 2018, for fact discovery. The scheduling order also set a deadline of November 30, 2018, for plaintiff to amend the complaint to add other parties. At a status conference on February 27, 2018, this Court then set a deadline of March 30, 2018, for filing dispositive motions, with oppositions due by April 30, 2018. Plaintiff did not move to amend the complaint until April 20, 2018, nearly three months after the close of fact discovery.

Plaintiff seeks to bring a claim against the City of Randolph, apparently on a theory of vicarious liability. (Mot. to Amend at 2 ("This motion is in response to defendant's assertions that the police officer's [sic] involved in this matter are not a legally distinct entity.")).

However, a municipality may not be held vicariously liable under § 1983 for the acts of its employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, a municipality may be liable only when the execution of its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* In other words, a municipality may only be liable when it can be fairly said that the municipality itself caused the constitutional violation at issue. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

To the extent plaintiff asserts a *Monell* claim against the city for failure to train or supervise its police officers, he is required to demonstrate both the existence of a policy or custom and a "direct causal link" between that policy and the alleged constitutional deprivation. *Canton*, 489 U.S. at 385; *see also Monell*, 436 U.S. at 694 (policy must be the "moving force [behind] the constitutional violation"). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, there are no allegations to support such an inference; indeed, plaintiff has alleged no evidence of other incidents of police misconduct or of flaws in Randolph Police Department policies. Accordingly, the motion to amend the complaint will be denied on the basis of futility.[5]

---

[5] In his opposition memorandum, plaintiff requests that defendants provide a copy of the Randolph Police Department's "Training Manual for K-9 Dogs." (Mem. in Opp. at 4). Plaintiff represents that he previously requested production of the manual, but that defendants only provided K-9 training logs from 2005. That is, in effect, either a discovery request or a motion to compel discovery. Plaintiff should take appropriate steps in either case, which may include contacting opposing counsel to see if the issue can be resolved voluntarily and informally, and filing a motion if appropriate to seek relief.

## IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is GRANTED as to Officer Craig Staffier and DENIED as to Officer Geoffrey Lucas. Plaintiff's motion to amend the complaint is DENIED.

**So Ordered.**

Dated: May 14, 2018

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge